IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

CARLETON W. ROGERS,                    }
TDCJ-CID NO.1348848,                    }
        Plaintiff,                    }
v.                                                        }                    CIVIL ACTION G-07-511
DISTRICT JUDGE SIM LAKE, *et al*.,    }
        Defendants.                    }

OPINION ON DISMISSAL

      Plaintiff Carleton W. Rogers, a state inmate proceeding *pro se* and *in forma pauperis*, filed a complaint pursuant to 42 U.S.C. §1983, seeking equitable and compensatory relief on grounds that United States District Judge Sim Lake, Major Carrillo, and the TDCJ Legal Department violated his civil rights.  On May 12, 2008, the Court dismissed plaintiff's claims against Judge Lake and the TDCJ Legal Department in an Opinion on Partial Dismissal. (Docket Entry No.37).  In response to the Court's Orders of May 12, 2008, and June 18, 2008, plaintiff filed two "More Definite Statements," addressing his claims against Major Carrillo. (Docket Entries No.41, No.52).  For the reasons to follow, the Court will deny plaintiff relief and dismiss this civil rights action.

I. CLAIMS

      Plaintiff alleges the following facts in support of this civil rights action:  To facilitate hospital visits for treatment of a liver illness, plaintiff was transferred from the Byrd Unit of the Texas Department of Criminal Justice—Correctional Institutions Division ("TDCJ-CID") to the Ramsey I Unit.  (Docket Entry No.41, page 7).  Soon after his transfer, plaintiff was threatened by his cellmate because of an offensive odor that plaintiff emitted as a result of the medication he was required to take for the illness.  (*Id*.).  He was moved to a new cell per his

1

request, where he was again threatened.  (*Id.*).  Eventually, he was moved to cell with an inmate nicknamed "T-Bone."  (*Id.*).  T-Bone ran an illegal laundry business from his cell; one day T-Bone refused to allow plaintiff in the cell.  (*Id.*).  Plaintiff reported his exclusion from the cell to Lt. Rodriguez, who went to the cell and confiscated the illegal laundry material.  T-Bone was charged with a disciplinary violation.  (*Id.*, page 8).  Because of Rodriguez's actions, T-Bone attacked plaintiff in their cell.  (*Id.*).  Plaintiff left the cell and immediately reported the incident to prison staff; Lt. Rodriguez, however, took no action on plaintiff's complaint.  (*Id.*).  Plaintiff remained outside the cell, lying on a concrete floor, where Lt. Gilbert found him.  (*Id.*).  Lt. Gilbert ordered plaintiff to get up but plaintiff told him that he was sick.  (*Id.*).  Gilbert kicked plaintiff periodically to force plaintiff to get up, but he did not call a nurse or give plaintiff a blanket or jacket to protect him from the cold weather.  (*Id.*).  No life-endangerment report was filed; instead, Lt. Gilbert arranged to move plaintiff to a cell close to the one that plaintiff had shared with T-Bone.  (*Id.*).  Thereafter, a rumor spread that T-Bone "punked" plaintiff out of the cell; consequently, everyone gave plaintiff problems.  (*Id.*, pages 8-9).  Plaintiff told Lt. Gilbert that he was supposed to move him off the wing for safety, to which Gilbert responded that plaintiff would have to fight this time.  (*Id.*, page 9).  Gilbert later told plaintiff that he talked to T-Bone and that T-Bone would not bother plaintiff.  (*Id.*).  Plaintiff's new cellmate Stewart, however, tried "to punk" plaintiff out of the cell in front of the whole wing.  (*Id.*).  Plaintiff fought with Stewart and suffered a broken thumb from the fight.  (*Id.*).  A month later after plaintiff returned from the hospital, Stewart awoke in the middle of the night complaining of plaintiff's odor and struck plaintiff from behind.  (*Id.*, page 12).  As plaintiff rolled over on his bunk and kicked Stewart away, he broke his ankle on the steel bed frame.  (*Id.*).  After plaintiff

returned from the hospital from this injury, he filed a report against Lt. Gilbert.  (*Id.*, page 9).
Plaintiff was moved to solitary confinement for protection.  (Docket Entry No.52, page 1).

       In early June, 2007, plaintiff filed suit against TDCJ-CID, the University of Texas
Medical Branch ("UTMB"), Lt. Rodriguez, Lt. Gilbert, and the Ramsey Unit in the United States
District Court for the Southern District of Texas, Houston Division.  *Rogers v. TDC*, Civil
Action No.4:07cv1909 (S.D. Tex. June 22, 2007).  In mid-June, 2007, Houston District Judge
Sim Lake ordered the case transferred to the United States District Court in Galveston, Texas.
*Id.*  The case was transferred and assigned a new case number.  *See Rogers v. TDC*, Civil Action
No.3:07cv330 (S.D. Tex.).

       In late July, 2007, plaintiff was transferred to the Wayne Scott ("Scott") Unit.
(Docket Entry No.52, page 1).  There, he discussed with Warden Trinci his record at the Ramsey
I Unit, the injuries he sustained while at the Unit, and the federal law suit that he had just filed.
(*Id.*, page 4).  Plaintiff agreed with the Warden's suggestion to make a fresh start on the Scott
Unit.  (*Id.*).  Plaintiff then walked to the Unit Classification Committee's ("UCC") waiting area.
As plaintiff sat down, a Hispanic inmate threatened plaintiff and said something about T-Bone,
the same inmate with whom plaintiff had fought on the Ramsey I Unit.  (*Id.*, pages 5-6).  Plaintiff
got up to defend himself and the inmate ran down the hall.  Plaintiff gave chase.  (*Id.*, page 6).
As plaintiff passed through the door to the waiting area, he saw T-Bone.  (*Id.*).  T-Bone told
plaintiff that Scott Unit officials were going to house them together and that plaintiff had better
refuse such housing or else.  (*Id.*).  Plaintiff and T-Bone started to fight.  (*Id.*).  Lt. Walton
interrupted the fight and plaintiff told Walton of the problems that he had with T-Bone on the
Ramsey I Unit and about the threat from the Hispanic inmate.  (*Id.*).  Walton locked plaintiff in
solitary confinement for protection. (*Id.*).  Walton told plaintiff that he would file a life

endangerment form, which would protect him until the investigating officers from Region III's Offender Grievance Office ("OIG") came to investigate plaintiff's Ramsey I Unit claims.  (*Id.*, page 4).  While plaintiff was in solitary confinement, a guard told him that he let a black "click" know plaintiff's location.  (*Id.*, page 7).

At his first UCC meeting with Major Carrillo on the Scott Unit, plaintiff told Carrillo about the threats, the fight with T-Bone, and Lt. Walton's actions.  (*Id.*, page 3).  Lt. Walton told Carrillo that he could not remember breaking up the fight between plaintiff and T-Bone and that he did not prepare a life-endangerment report.  (*Id.*).  Carrillo then called plaintiff a liar.  (*Id.*).  Plaintiff told Carrillo about his conversation with Warden Trinci.  Carrillo indicated that he would place plaintiff back in solitary for thirty more days.  (*Id.*).

At plaintiff's second UCC meeting with Carrillo, Carrillo informed plaintiff that he had called Lt. Gilbert, the Ramsey Unit officer that plaintiff had sued for assault and that Gilbert told Carrillo there was not a problem.  (Docket Entries No.41, page 7, No.52, page 3).  Plaintiff complained to Carrillo that three people were supposed to investigate his complaint of life-endangerment per TDCJ policy.  (Docket Entry No.52, page 3).  Carrillo ordered plaintiff back to the general population.  As Carrillo ordered plaintiff out of the meeting, he threatened plaintiff with physical harm.  Plaintiff told Carrillo that he was endangering plaintiff's life by listening to Walton's lies.  (*Id.*).

Upon his return to the general population, plaintiff was housed on the same wing as T-Bone.  (Docket Entry No.41, page 13).  Soon thereafter, other inmates harassed plaintiff, stole his property, and refused to give him food.  (Docket Entry No.52, pages 5-6).  A sergeant made the inmates give him food in the mess hall and a few days later, plaintiff was assaulted. (Docket Entry No.41, page 13).

On September 24, 2007, plaintiff filed the pending civil rights case, in which he complained that he suffered mental anguish and bodily injury as a result of the order by Judge Lake transferring the case to the Galveston District Court and from actions taken by Major Carrillo and the TDCJ Legal Department.  (Docket Entry No.1).  Sometime around the first of October 1, 2007, plaintiff received a punch to his cheek and his "head busted a window" during an assault by an unknown inmate, who plaintiff claims was a member of T-Bone's gang.  (*Id.*, page 2).  Plaintiff required stitches to his head and medication to treat an infection around the stitches.  (*Id.*, pages 2-3).  He still suffers from bouts of "passing out" and a staph infection. (Docket Entries No.41, page 17, No.52, pages 2-3).  Plaintiff did not receive a disciplinary case from this assault.  (Docket Entry No.52, page 7).  Sgt. Cash completed a life-endangerment form after the assault.  (*Id.*, page 4).  In late November, 2007, after a final decision was made in Huntsville, plaintiff was transferred to the Darrington Unit.  (*Id.*, page 2, 4).

## II. MOTIONS

On October 25, 2007, plaintiff's cases were re-assigned to the undersigned judge in the Houston Division of the Southern District of Texas.[1]  Thereafter, on May 12, 2008, the Court entered an Order on Partial Dismissal, dismissing plaintiff's claims against Judge Lake and the Legal Department, and retaining his claims against Major Carrillo.  (Docket Entry No.37).  In both Civil Action No.3:07cv330 and the present case plaintiff has flooded the Court with motions and documents, many of which are plaintiff's attempts to amend his original complaint.

Plaintiff's many motions to amend his complaint fail to sufficiently incorporate the allegations raised in his original complaint and his more definite statements.  A party may

---

[1] The Court has denied plaintiff's request to consolidate the two civil cases because in the pending case, plaintiff sought relief from two parties who bore no connection to the parties or claims that plaintiff complained of in Civil Action No.3:07cv330.

abandon a claim if the party fails to sufficiently incorporate, attach, or re-allege the claim in an amended pleading.  *See e.g.,* FED. R. CIV. P. 10(c) (providing that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion.  A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes").  *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (holding "an amended complaint ordinarily supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading").  The Court, however, is mindful that pleadings prepared by prisoners who do not have access to counsel must be liberally construed.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Court is also mindful that *pro se* litigants are not exempt from complying with the relevant procedural rules and substantive law.  *Hulsey v. State*, 929 F.2d 168, 171 (5th Cir. 1991).  Dismissal of a *pro se* litigant's action is proper when he engages in a clear pattern of delay or disregards a court rule or order.  *Id.* at 171.  Plaintiff has clearly disregarded the procedural rules with respect to his motions to amend.  Accordingly, the Court DENIES all of plaintiff's motions to amend. (Docket Entries No. 58, No.60, No.63, No.65, No.67, No.68).

After screening each motion and pleading, the Court has determined that in many instances, plaintiff seeks to supplement the complaint with new claims regarding the denial of parole and new claims of life-endangerment against Darrington Unit personnel.  Under Rule 15(d) of the Federal Rules of Civil Procedure, a district court may permit a party to file a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented.  *Burns v. Exxon Corp.*, 158 F.3d 336, 343 (5th Cir. 1998).  A supplemental pleading may bring in new claims and parties when the subsequent events alleged stem from original cause of action.  *Griffin v. County Sch. Bd. of*

*Prince Edward County*, 377 U.S. 218, 226-27 (1964).  Plaintiff states no facts, however, to show that his new claims stem from the pending cause of action.  Therefore, to the extent that plaintiff's motions to amend may be construed as a motion to supplement, the Court DENIES such motions.  All other pending motions are DENIED.

The Court observes that the docket sheet lists Carillo, Trinci, and Walter as defendants.  The Court finds that Carillo is Major Carrillo, one of plaintiff's original defendants.  The Court finds no defendant named Walter in any of plaintiff's pleadings.  Although plaintiff sought to amend his complaint by adding Lt. Walton, Warden Trinci, and many other persons as defendants to this cause (Docket Entry No.47), such motion and other motions to amend were denied.  (Docket Entry No.50).  Therefore, the Clerk is ORDERED to STRIKE Carillo, Walter, and Trinci as parties to this suit from the Court's docket.

### III. DISCUSSION

This civil rights action is governed by the Prison Litigation Reform Act ("PLRA").  Because plaintiff is a prisoner who proceeds *in forma pauperis*, the PLRA requires that the district court scrutinize the basis of the complaint, and, if appropriate, dismiss the case at any time without service of process if the court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief.  42 U.S.C. 28 U.S.C. § 1915(e)(2)(B); *see also* 42 U.S.C. § 1997(e)(c) and 28 U.S.C. § 1915A(b).  In conducting that analysis, a prisoner's *pro se* pleading is reviewed under a less stringent standard that those drafted by an attorney and is entitled to a liberal construction that includes all reasonable inferences, which can be drawn from it.  *Haines*, 404 U.S. 519; *Alexander v. Ware*, 714 F.2d 416, 419 (5th Cir. 1983).

7

A complaint may be dismissed as frivolous if it lacks any arguable basis in law or fact.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges violation of a legal interest which clearly does not exist."  *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999) (citing *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998)).

To establish a failure-to-protect claim under 42 U.S.C. § 1983, a prisoner must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995).  To act with deliberate indifference, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Only deliberate indifference will suffice to state a failure-to-protect claim; mere negligence is not sufficient.  *See id*.; *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Plaintiff contends that Major Carrillo failed to protect him from the harassment of other inmates and the assault by an unknown inmate by placing plaintiff in the general population, instead of continuing plaintiff's confinement in protective solitary.  Plaintiff's pleadings, however, show that Major Carrillo weighed plaintiff's claims regarding his alleged fight with T- Bone and his history of assault on the Ramsey I Unit against Lt. Walton's statements that he did not recall interrupting a fight between plaintiff and T-Bone and therefore, did not file a life-endangerment form on plaintiff's behalf.  After considering the same, Carrillo

returned plaintiff to protective custody. Thereafter, an investigation was conducted regarding plaintiff's claims. At the next UCC meeting, Carrillo reported his findings and ordered plaintiff returned to the general population, where he was housed on the same wing as T-Bone. Although plaintiff was allegedly harassed by other inmates, he does not claim that he was physically attacked until after a guard confronted inmates, who had withheld or taken plaintiff's food. Plaintiff does not allege that he had any prior warning that such attack was imminent or that he reported to Carrillo or to any other TDCJ officer that he was in danger of such attack. Likewise, to the extent that the attack in the middle of the night by an unknown inmate was a different or second assault from the assault that occurred after the food confrontation, plaintiff states no facts to show that he was aware of, or that he made any TDCJ official aware of, any specific threat to his safety.

Plaintiff's general dissatisfaction with Carrillo's investigation rises only to the level of mere negligence, if anything, and is not sufficient to state a failure-to-protect claim. *See Farmer*, 511 U.S. at 837; *see also Neals*, 59 F.3d at 533 (concluding that allegations amounting to a claim of negligence in the failure-to-protect context did not raise a non-frivolous constitutional claim); *Oliver*, 914 F.2d at 60 (holding that a negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983). "[R]esponding to an inmate's complaints 'by referring the matter for further investigation' or taking other appropriate administrative action fulfills an official's protective duties under the Eighth Amendment. *Longoria v. Texas*. 473 F.3d 586, 594 (5th Cir. 2006).

Likewise, Carrillo's alleged failure to follow TDCJ policy and procedures in conducting his investigation of plaintiff's assault claims on the Ramsey I Unit does not violate plaintiff's right to due process. *See Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)

(finding "prison official's failure to follow the prison's own policies, procedures, or regulations does not constitute a violation of due process, if constitutional minima are nevertheless met"). Finally, Carrillo's alleged threats to injure plaintiff and his alleged accusation that plaintiff was a liar are not actionable under § 1983.  The threats and gestures of a custodial officer, without a physical assault, do not amount to a constitutional violation even if true.  *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983); *see also Petta v. Rivera*, 143 F.3d 895, 904 (5th Cir. 1999); *Jackson v. Liberty County*, 860 F.Supp. 360, 363 (E.D. Tex. 1994) (noting "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment"); *Slagel v. Shell Oil Refinery*, 811 F. Supp. 378, 382 (C.D. Ill. 1993) (finding "citizens do not have a constitutional right to courteous treatment by the police.  Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional violation under 42 U.S.C. § 1983"), *aff'd*, 23 F.3d 410 (7th Cir. 1994).  Accordingly, plaintiff's claims against Carrillo are without a legal basis and therefore, are subject to dismissal.

## IV. CONCLUSION

Based on the foregoing, the Court ENTERS the following ORDERS:

1.  All pending motions are DENIED.

2.  Plaintiff's complaint is DISMISSED WITH PREJUDICE, as legally frivolous, pursuant to 28 U.S.C. § 1915(e)(2)(B).  All claims against all defendants are DISMISSED.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas, this 23rd day of February, 2009.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE